## SHOE AND LEATHER NATIONAL BANK *vs.* GEORGE F. WOOD & another.

Suffolk. March 4. — Oct. 23, 1886. W. ALLEN & HOLMES, JJ., absent.

A promissory note, made and signed in another State, and payable there, although sent by mail to the payee in this Commonwealth, is executed in, and to be governed by the law of, the other State.

Under the Gen. Sts. of Kentucky, c. 22, §§ 6, 21, promissory notes, though negotiable in form, are subject, in the hands of an indorsee, to any defence the maker has against the payee before notice of the transfer.

If the sole consideration of a promissory note, which is not negotiable by the law of the State where it is made and is payable, is an agreement to deliver certain goods, and the payee fails in business and is unable to deliver a portion of the goods, in an action upon the note, by an indorsee against the maker, in this Commonwealth, failure of consideration may be set up in defence thereto.

In an action against the maker of a non-negotiable promissory note, by a bank which had discounted the note for the payees, the defence was failure of consideration owing to the neglect of the payees to send to the maker certain goods. The plaintiff offered to show that the money obtained by the discount of the note was applied by a special partner of the payees to the payment of another note of the same maker, and payable to a firm composed of said special partner and one of the payees of the note in suit. *Held,* that the evidence was rightly excluded.

It is not contrary to the provisions of the Constitution of the United States for a State to enact a statute giving the maker of a negotiable promissory note the same defence as against an indorsee that he has against the payee, if the note is made in such State and is payable there.

Where the evidence of a foreign law consists entirely of a statute, the question of its construction and effect is for the court.

CONTRACT, against George F. Wood and William C. Caye, upon three promissory notes, each dated at Louisville, Kentucky, in May, 1883, payable six months after date to the order of Macomber and Greenwood, at the Kentucky National Bank, signed by the defendants in the firm name of George F. Wood and Company, and indorsed by the payees. The answer set up failure of consideration, and that the notes were governed by the law of Kentucky.

Trial in the Superior Court, before *Rockwell*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff is a national bank, organized under the United States banking laws, and located at Boston, Massachusetts. The defendants are members of the firm of George F. Wood and Company. Both the defendants reside at Louisville, Kentucky, and carry on business there as auctioneers and commission merchants. The Kentucky National Bank is a bank organized in Kentucky, under the banking law of the United States.

The firm of Wallace and Macomber was composed of George Wallace and G. B. Macomber, and carried on the boot and shoe business in Boston for a number of years, but it dissolved in the early part of 1883, and was succeeded by the firm of Macomber and Greenwood, composed of the said G. B. Macomber and A. Greenwood, as general partners, and the said George Wallace, as special partner.

There was evidence tending to show that, before the making of the notes in suit, Wallace and Macomber had received three notes signed by the defendants, amounting in all to the sum of $5667.15, which had been discounted by the plaintiff bank for Wallace and Macomber, and fell due on several dates in June, 1883; that Wallace and Macomber had sent out certain goods to the defendants to be sold, the proceeds to be applied towards paying the notes, but, the proceeds not being sufficient for that purpose, the defendants, in June, drew on Wallace and Macomber for several thousand dollars with which to pay said notes, and

said drafts were honored and said notes paid thereby; that in June, 1883, G. B. Macomber wrote to the defendants from Boston, that there were some goods on hand belonging to Wallace and Macomber, of which Wallace had control; that Wallace was settling the affairs of the old concern and wished some notes; and that he would forward the goods when the time came.

Three notes, corresponding in every respect with the three in suit, except that the payees were Wallace and Macomber, were sent by the defendants from Louisville, by mail, to Macomber, in response to his letter. Macomber then returned these notes, saying he did not wish to indorse them, as the concern had dissolved, and requesting that they be made payable to the order of Macomber and Greenwood.

The notes in suit were then made and signed by the defendants in Louisville, and mailed to Macomber and Greenwood, in Boston, and by them received; and one of them, to the amount of $1624.22, was discounted by the plaintiff bank for Macomber and Greenwood, at six per cent, and passed to their credit, on June 19, 1883, they keeping an account with the plaintiff bank. The other two notes were discounted by the plaintiff bank for Macomber and Greenwood on June 29, 1883, at six per cent, and passed to their credit.

Wallace and the firm of Macomber and Greenwood subsequently sent to the defendants, to be sold, a part of the goods, in accordance with their agreement, the net proceeds of which amounted to but $1128.07, which the defendants have paid on account of said notes.

In August, 1883, Macomber and Greenwood failed, and were unable to deliver the remainder of the goods to meet said notes, although the defendants were ready to receive them; and the defendants were informed of said failure, and were informed some thirty days before the notes in suit fell due that the said notes had been discounted by the plaintiff bank.

So far as the evidence admitted by the court went, the sole consideration of said notes was the agreement to deliver said goods, and if the defendants had paid said notes according to their tenor, there would have been due to the defendants from Macomber and Greenwood the amount sought to be recovered in this action.

The plaintiff offered to prove that Macomber and Greenwood, in June, 1883, on the days of the discount of the notes in suit, or the days following, furnished to Wallace the amount of discount of these notes, to enable Wallace to take up for the defendants their notes that fell due in said June, which had been discounted by the plaintiff bank for Wallace and Macomber, and that said money was never repaid. The judge refused to admit this evidence.

The defendants offered in evidence the following statutes as the law of the State of Kentucky:

"All bonds, bills, or notes for money or property shall be assignable so as to vest the right of action in the assignee; but except in case of bills of exchange, not to impair the right to any defence, discount, or offset that the defendant has and might have used against the original obligee or any intermediate assignor, before notice of the assignment." Gen. Sts. of Kentucky, c. 22, § 6.

"Promissory notes, payable to any person or persons, or to a corporation, and payable and negotiable at any bank incorporated under any law of this Commonwealth, or organized in this Commonwealth under any law of the United States, which shall be indorsed to, and discounted by, the bank at which the same is payable, or by any other of the banks in this Commonwealth, as above specified, shall be, and they are hereby, placed on the same footing as foreign bills of exchange." Gen. Sts. of Kentucky, c. 22, § 21.

The defendants contended that the notes signed and payable in Kentucky, and mailed in Kentucky by the defendants to Macomber and Greenwood in Massachusetts, were governed by the laws of the State of Kentucky, and the judge so ruled; the plaintiff contending that said notes were governed by the laws of Massachusetts, and that said statutes of Kentucky were in contravention of public policy, and in violation of the Constitution of the United States, and were not applicable to a national bank organized under the laws of the United States, and should not be enforced by a Massachusetts court.

At the close of the evidence, the judge, at the request of the defendants, ruled, on the whole evidence and offers of proof, that there was no consideration for these notes, except for

$1128.07, which had been paid; and ordered a verdict for the defendants. The plaintiff alleged exceptions.

· *H. D. Hyde*, for the plaintiff.

*A. Hemenway & D. F. Kimball*, for the defendants.

GARDNER, J.    1. The plaintiff contends that the notes in suit were made in Massachusetts, and that the laws of this State are to govern the contracts. The defendants, the makers of the notes, resided in Kentucky. They made and signed the notes at Louisville in that State, and then sent them by mail to the payees in Massachusetts. By their terms, they were payable at the Kentucky National Bank, a bank organized in Kentucky under the banking law of the United States.

Under our decisions, these various circumstances determine the place where the contract was executed, and where it was to be consummated. It was clearly a Kentucky contract, and is to be governed by the laws of that Commonwealth. *Pine* v. *Smith*, 11 Gray, 38. *Carnegie* v. *Morrison*, 2 Met. 381. *Orcutt* v. *Nelson*, 1 Gray, 536. *Milliken* v. *Pratt*, 125 Mass. 374.

2. The defendants put in evidence the Gen. Sts. of Kentucky *c.* 22, §§ 6, 21, which are set forth in the exceptions. At the argument, the defendant's counsel, without objection on the part of the plaintiff, cited cases decided in Kentucky, for the purpose of showing that promissory notes are not commercial paper in that State. *Schooling* v. *M'Ghee*, 1 T. B. Mon. 232. *Sharps* v. *Eccles*, 5 T. B. Mon. 69, 72. *Caldwell* v. *Cook*, 5 Litt. 181. *Prather* v. *Weissiger*, 10 Bush, 117, 126, 127. *Hyatt* v. *Bank of Kentucky*, 8 Bush, 193, 199. *Luckett* v. *Triplett*, 2 B. Mon. 39. *Clay* v. *McClanahan*, 5 B. Mon. 241. *True* v. *Triplett*, 4 Met. (Ky.) 57. *Thompson* v. *Moore*, 4 T. B. Mon. 79. The bill of exceptions does not find that these cases were not before the court at the trial. The Superior Court ruled, in substance, that the notes in suit are subject to any defence, discount, or offset that the defendants might have and might have used against the original obligees, Macomber and Greenwood, or any intermediate assignor, before notice of the assignment, in accordance with the provision of the Gen. Sts. of Kentucky, *c.* 22, § 6. An examination of the cases above cited shows that the ruling of the Superior Court was in accordance with the decisions of the courts of Kentucky upon this subject matter. But, independently of

these decisions, we cannot say that the ruling of the Superior Court was incorrect.

3. After the construction put upon the statute by the court, it remained to be determined whether there was any failure of consideration of the notes in suit. The sole consideration of the notes was the agreement to deliver certain goods. The payees, Macomber and Greenwood, failed, "and were unable to deliver the remainder of the goods to meet said notes." The court ruled that there was no consideration except for $1128.07, which had been paid on the notes. This ruling was correct. The notes were not negotiable promissory notes, and failure of consideration could be set up as matter of defence thereto.

4. The evidence offered by the plaintiff, and excluded by the court, relative to the transactions between Macomber and Greenwood, and Wallace and Macomber, was properly rejected. It related to matters concerning which neither the plaintiff nor the defendant had any knowledge. They were clearly res inter alios.

5. The plaintiff finally contends that this Kentucky statute is in contravention of the Constitution of the United States. We see no reason why Kentucky may not enact a law making the liabilities of signers of commercial paper made and payable within its limits entirely different from the laws of other States respecting such liabilities, and by statute change absolutely the operation of the law merchant, so far as it affects contracts made and to be performed within that State. The Constitution of the United States presents no obstacle to the exercise of such power by the several States. The plaintiff has not referred us to any authorities or decisions in support of his contention that the statute of Kentucky is in conflict with the Constitution of the United States.

6. The construction of the Kentucky statute was for the court. *Kline* v. *Baker*, 99 Mass. 253, 255. On the rulings given, there was nothing in dispute which entitled the plaintiff to go to the jury.            *Exceptions overruled.*