CHARLES J. UFFORD *vs.* CHARLES E. SPAULDING.

Suffolk. November 18, 1891. — February 26, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Conversion — Law of another State — Auditor's Report — Ruling.*

Laws of other States must be proved in this Commonwealth as facts, and ordinarily, in a trial by jury, the question must be left to the jury to decide as a fact what the law of another State is, if it becomes material to be determined; but where the evidence consists of a statute or judicial opinion, its construction is for the court.

A., being a resident of New Hampshire, gave in that State a mortgage of personal property there situate to B., and afterwards, with B.'s consent, removed the property to this Commonwealth. In an action of tort for conversion brought by B. against the assignee in insolvency of A., evidence of three kinds was introduced to determine what the law of New Hampshire was, namely, a certain chapter of the General Laws of that State, seven judicial decisions, and the auditor's report. *Held,* that the law of New Hampshire applicable to the case was a question of fact for the jury; that, as in the brief for the plaintiff, there was no reference to any section of the chapter relied on, and as in the defendant's brief it was expressly stated that the law of New Hampshire depended on decisions, the statute was not to be considered; that as the auditor's statement of the rule of law was expressly limited to the effect of a mortgage against creditors in New Hampshire, and had no application to creditors in this State, and as, moreover, the auditor did not state any rule of law in New Hampshire applicable to the facts which he found, a ruling of the presiding justice intended to clear up the difficulty arising upon the auditor's report was erroneous, in the absence of evidence showing beyond controversy, as a fact, that such ruling was the law; and that the court could not assume that the law of New Hampshire upon the subject in question was like that of Massachusetts.

ALLEN, J. The plaintiff's title was under a mortgage of personal property, being a stock of millinery goods, given in New Hampshire by a resident of that State upon property then situated there. The validity of the mortgage therefore depends on the law of New Hampshire. The mortgage was not recorded, and no possession was taken under it for several months.

It is a general rule, that laws of other States must be proved as facts, and ordinarily, in a trial by jury, the question must be left to the jury to decide as a fact what the law of another State is, if it becomes material to be determined. This may in some cases prove inconvenient in practice, especially in view of the provision of our statute that the court shall not charge juries with respect to matters of fact; but such is the established rule in this Commonwealth. Pub. Sts. c. 169, §§ 72, 73. *Holman* v. *King*, 7 Met. 384, 388. *Ames* v. *McCamber*, 124 Mass. 85.

To this rule there is an exception where the evidence which is given of the law of another State consists of a statute or judicial opinion or document. In such case, the construction of such evidence is for the court. *Ely* v. *James*, 123 Mass. 36. *Hackett* v. *Potter*, 135 Mass. 349. *Kline* v. *Baker*, 99 Mass. 253. Whether this exception includes cases where the law is to be gathered from more than one statute or judicial decision, or from a statute construed in the light of such decisions, need not now be considered.

In the present case, three kinds of evidence were introduced, which might be considered in determining what the law of New Hampshire was; namely, chapter 137 of the General Laws of New Hampshire, seven judicial decisions, and the auditor's report. And on an examination of all of these, we are forced to the conclusion that the law of New Hampshire applicable to this case was not for the court, but was a question of fact for the jury.

It is rather singular that neither party has referred to any particular section of the statute on which he relies. According to the statement in the bill of exceptions, a whole chapter was put in evidence, with no designation of any particular section which was supposed to be applicable. In the brief for the plaintiff there is no reference to any section relied on; and in the defendant's brief it is expressly stated that the law of New Hampshire depends upon decisions, not on statute. Since neither party relies on the statute, and since no particular section has been

referred to, we lay it aside, without considering whether the plaintiff's claim can stand, consistently with any construction there given to section 12 of that chapter; that question not having been touched upon by counsel.

In the auditor's supplemental report, it is found as a fact, that at the time the mortgage was given there was an understanding between the mortgagor and the mortgagee, that, upon her (the mortgagor's) removal to Franklin, in Massachusetts, "she should by sales in the ordinary course of her retail business run down the stock, and with the proceeds pay the mortgagee what she could, after paying her business and living expenses. She was to live and do the best she could." The auditor then states the law of New Hampshire as follows: " I find it to be the law of New Hampshire that a mortgage of personal property is invalid against the mortgagor's creditors in that State if a secret trust is created in the mortgagor's favor by an agreement between mortgagor and mortgagee that the mortgagor is to remain in possession and act as absolute owner of the mortgaged property." This is his whole statement of the law. He adds the following findings of facts: " I find that the mortgagor in this case remained in possession, and had the right to sell all or a part of the mortgaged property, and acted as the absolute owner of the mortgaged property by an understanding with the mortgagee equivalent to an agreement, and so continued from the time this mortgage was given until plaintiff took possession in Franklin, Oct. 27, 1888, but that no secret trust in favor of the mortgagor was created or intended." We suppose the auditor must have meant that he found that no secret trust was created, in view of his other finding that the mortgagor was to pay the mortgagee what she could, after paying her business and living expenses. The auditor's statement of the rule of law is expressly limited to the effect of a mortgage against creditors in that State, and has no application to creditors who, like the defendant, live in Massachusetts; and moreover he does not state any rule of law in New Hampshire applicable to the facts which he finds.

The learned chief justice at the trial, in order to aid in clearing up the obvious difficulty arising upon the auditor's report, explained to the jury that the same rule would be applicable

to creditors living out of New Hampshire, as well as to those living in that State, and added : " With reference to the finding of the auditor that there was no secret trust, you will consider the evidence with reference to that finding in the light of this somewhat fuller statement of the law of New Hampshire upon that point. If you find as a matter of fact that the mortgagee stipulated that, although the mortgagor was permitted to sell the property as freely as the absolute owner might sell it, and that she might apply a portion of the proceeds to her own living expenses and to the expenses of the business, if you find that it was stipulated that she should apply all the proceeds beyond that to the payment of the mortgage, then she did not have the unqualified control of the property that belongs to the absolute owner, and there would not arise, under the law of New Hampshire, from that state of facts, any secret trust in favor of the mortgagor, and the mortgage would be valid as against creditors for aught that has appeared in this case." And a little later he said : " To make the mortgage void under the law of New Hampshire, upon the ground that the mortgagor was to retain the control of the absolute owner, it must appear that she had the absolute control to sell the property in any way that she pleased, either in the ordinary course of the retail trade or any other way that she might, as the absolute owner, take it into her head to do it ; that she might do with the proceeds just as the absolute owner might do, apply them to new investments or in any other way that she chose."

It seems rather to be implied from this, that to render the mortgage void the agreement must go so far as to authorize the mortgagor to apply the whole of the proceeds of the sales to her own use.

Now we are far from saying that this would not be a just and sensible exposition of the law of New Hampshire ; but, inasmuch as the law was to be proved as a fact, our difficulty is in finding any evidence in the case showing beyond controversy, as a fact, that such was the law. The auditor's report upon the law certainly fails to reach this aspect of the case ; and we find nothing going so far in the decisions which were introduced as evidence. One of these decisions was *Ranlett* v. *Blodgett*, 17 N. H. 298. In that case, the mortgage was held to be invalid because the

mortgagor did not agree to pay the mortgagee the surplus over the cost of manufacturing articles from the materials on hand. It was implied that with such an agreement the mortgage might have been valid. There is, however, nothing in the judgment of the court which holds or implies that the mortgage would be valid if the mortgagor was at liberty to deduct the cost of his living expenses for an indefinite period, paying over to the mortgagee what he found that he could, after deducting all business and living expenses, these being determined by himself. That is a state of facts not presented in that case. Neither of the other cases cited goes further in this direction than *Ranlett* v. *Blodgett.*

We can find no evidence in the case that it was the law of New Hampshire that a mortgage of personal property would be valid there, if the mortgagor was permitted to remain in possession and act as absolute owner and sell the property and apply a part of the proceeds not only to the expenses of the business, but also to the mortgagor's expenses of living for an indefinite period, without any attempt to stipulate or fix a limit either in time or amount to such expenses, and then pay over the remainder to the mortgagee. No decision of the courts of that State which was put in evidence involved this question, and we find in those cases no dictum of the court declaring that such a rule of law is recognized as established there. We do not see that it could be stated to the jury, as a fact proved beyond controversy by the evidence in the case, that such was the rule of law in New Hampshire.

The decisions in New Hampshire being merely evidence, we cannot look beyond those that were introduced as evidence in the Superior Court. *Hackett* v. *Potter,* 135 Mass. 349, 350, and cases cited. If those cases did not either directly or by necessary implication show what was the rule of law in New Hampshire upon the point involved, then there was a lack of evidence. If there was a total lack of evidence, it might be assumed that the common or unwritten law was the same as that of Massachusetts. But there are statutes regulating mortgages of personal property in New Hampshire, and these are not the same as the statutes of Massachusetts. Moreover, in one of the cases put in evidence, *Putnam* v. *Osgood,* 51 N. H. 192, the court expressly

dissents from doctrines established here which have relation to the subject. In addition to this, it is made known to us at the argument that there are other decisions which are deemed to throw light upon the question, which were not before the court at the trial, and which we cannot treat as evidence in the case. We cannot therefore assume that the law of New Hampshire was like that of Massachusetts.

It seems to us that a statement was given to the jury as to the rule of law in New Hampshire, which, though it may have been correct in itself, was beyond what was warranted by the evidence in the case.          *Exceptions sustained.*

*J. Prentiss,* for the defendant.

*P. E. Tucker,* for the plaintiff.